UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPLOC LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-3372-B |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | |
| EUROPE LIMITED and CERTAIN | § | |
| UNDERWRITERS AT LLOYD'S OF | § | |
| LONDON, SYNDICATE 2488 CGM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Liberty Mutual Insurance Europe Limited and Defendant Certain Underwriters at Lloyd's of London, Syndicate 2488 CGM's Motion to Dismiss Amended Complaint (Doc. 22). Defendants seek dismissal of Plaintiff CapLOC LLC's breach-of-contract claim and statutory claims arising from Defendants' denial of Plaintiff's claim for coverage under an insurance policy. The motion presents several questions ill-suited for resolution at the motion-to-dismiss stage, particularly given that the viability of Plaintiff's breach-of-contract claim may hinge on a choice-of-law issue. As a result, the Court **DENIES** Defendants' motion to dismiss the breach-of-contract claim and most of the statutory claims. Nevertheless, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's statutory claims brought under Texas Insurance Code § 541.060(a)(1) and Texas Business and Commerce Code §§ 17.46(b)(12) and 17.50(a)(3). Accordingly, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

# I.

# BACKGROUND[1]

A.    *The Policy*

This is an insurance dispute arising from mortgage fraud. Plaintiff serves as a "warehouse" lender for mortgage lenders, meaning Plaintiff "provides mortgage lenders with short-term, revolving lines of credit to enable . . . mortgage lender[s] to fund and close mortgage loans." Doc. 16, Am. Compl., ¶ 9. To protect against the risk of fraudulent loans, Plaintiff purchased "a Financial Institutions Third Party Catastrophe Blanket Bond Insurance Policy" (hereinafter "the Policy") from Defendant Certain Underwriters at Lloyd's of London, Syndicate 2488 CGM. *Id.* ¶¶ 7, 10. The Policy was effective June 6, 2017, to June 6, 2018. *Id.* ¶ 7. Under the Policy, Defendants "agree[d] to indemnify [Plaintiff] for direct financial loss . . . ." *Id.* ¶ 12. The Policy applies only "to loss discovered by [Plaintiff] during the Policy Period" and excludes "loss sustained by [Plaintiff]" before June 6, 2017. Doc. 22-1, Defs.' App., 15, 20. Further, the Policy contains a choice-of-law clause, which states: "[A]ny dispute concerning the interpretation of this Certificate shall be governed by the laws of New York . . . ." *Id.* at 28.

The Policy has two insuring agreements relevant here. First, Insuring Agreement (A), titled "<u>FIDELITY</u>," insures against "[d]irect financial loss to [Plaintiff] caused by Dishonest Acts of a Mortgage Third Party concerning Mortgage Loans." *Id.* at 9 (emphasis omitted). Second, Insuring Agreement (B), titled "<u>MORTGAGE FRAUD</u>," covers "[d]irect financial loss to [Plaintiff] caused by [Plaintiff] or any Mortgage Third Party accepting, receiving, delivering, or otherwise acting or

---

[1] The Court draws the facts from Plaintiff's amended complaint (Doc. 16) and Defendants' appendix (Doc. 22-1).

relying in good faith and in the course of business upon any: (a) Fraudulent Mortgage; or (b) Fraudulent Written Instructions." *Id.* (emphasis omitted).[2]

Further, the Policy contains two relevant time-limitation provisions. The first (hereinafter "the notice limitation"), provides: "At the earliest practicable moment, not to exceed sixty (60) days after discovery of loss that exceeds or appears reasonably likely to exceed the Single Loss Retention [of $1,000,000], [Plaintiff] shall give [Defendants] notice thereof." *Id.* at 16 (emphasis omitted); *see id.* at 7. The second (hereinafter "the suit-filing limitation") imposes a window of time for Plaintiff to bring any "[l]egal proceedings for the recovery of any loss" under the Policy. *Id.* at 16. Specifically, under the suit-filing limitation, Plaintiff may not bring suit "prior to the expiration of sixty (60) days after the original proof of loss is filed with [Defendants] or after the expiration of twenty-four (24) months from the discovery of such loss." *Id.* Under the Policy, "[d]iscovery occurs when the Chief Executive Officer, General Counsel or President of the warehouse lending division of [Plaintiff] first becomes aware of facts or circumstances which would cause a reasonable person to believe that a loss of a type covered by [the] Policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred . . . ." *Id.* at 15.

B.    *The Claim for Coverage*

Plaintiff, serving as a warehouse lender, "agreed to provide a line of credit to fund new loans originated by First Mortgage Company, LLC ('FMC')," a mortgage lending company owned by Ron McCord ("McCord"). Doc. 16, Am. Compl., ¶¶ 22–23. Under Plaintiff's agreement with FMC, "FMC received loan applications from consumers to apply to purchase residential real estate or

---

[2] The Policy provides definitions for "Dishonest Acts," "Fraudulent Mortgage," "Fraudulent Written Instructions," "Mortgage Loan," and "Mortgage Third Party," among other terms. *See id.* at 10–12.

refinance their current mortgage." *Id.* ¶ 24. Then, "[i]f an application met the requirements of the parties' agreements and [Plaintiff's] guidelines, FMC . . . would submit a written request to [Plaintiff] to fund the loans." *Id.* From March 30, 2017, to June 6, 2017, Plaintiff "funded 2,513 loans totaling more than $468 million" for FMC. *Id.* ¶ 23. Unbeknown to Plaintiff, however, FMC requested funding for ineligible loans, and FMC and McCord "intentionally concealed the nature of" these loans. *Id.* ¶¶ 25–26. Relying upon the requests for funding, "[Plaintiff] authorized wire transfers" totaling $34 million to purchase the ineligible loans. *Id.* ¶ 27. After learning that it had funded ineligible loans, Plaintiff demanded that FMC and McCord repurchase the loans, but they refused. *Id.* ¶ 28. At some point, Plaintiff discovered that FMC and its related entities not only induced Plaintiff to fund ineligible loans, but "approximately half of the [u]nauthorized [l]oans were outright fraudulent." *Id.* ¶ 29.

In light of FMC and McCord's fraudulent conduct, Plaintiff filed a civil lawsuit in the United States District Court for the Southern District of New York on July 31, 2017. *Id.* ¶ 30. After the lawsuit was filed, Plaintiff further "discovered that FMC/McCord stole money from borrowers who sent in their money to pay off their mortgage loans, only for FMC/McCord to pocket the money" instead of applying it to the borrowers' debt. *Id.* ¶ 31. As a result of FMC and McCord's conduct, Plaintiff claims approximately $34 million in losses. *Id.*

On June 25, 2018, Plaintiff notified Defendants of its claim for coverage under the Policy to recover for the losses caused by FMC and McCord's scheme. *Id.* ¶ 32. Prior to this point, Plaintiff was unaware—"for a variety of reasons, including personnel turnover"—of the applicability of the Policy to its losses. *Id.* Plaintiff alleges that despite its full cooperation with Defendants' investigation of Plaintiff's claim, such as providing additional information to Defendants four different times in 2019,

Defendants "continued delaying payment of [Plaintiff's claim] by unnecessarily request[ing] even more information." *Id.* ¶¶ 33–34 (emphasis omitted). Finally, on March 2, 2020, Defendants denied coverage of Plaintiff's claim "based on non-substantive time limitation provisions." *Id.* ¶¶ 35, 38. Plaintiff alleges that Defendants "strung [Plaintiff] along" by conducting a twenty-month investigation of its claim that culminated in a denial premised on the timing of its claim. *See id.* ¶ 38.

Several months after the denial of coverage, Plaintiff filed suit against Defendants in Texas state court. *See generally* Doc. 1-2, Pet. Defendants thereafter removed the action to this Court based on diversity jurisdiction. *See generally* Doc. 1, Notice of Removal, 1–2. In its operative complaint, Plaintiff alleges the following claims against Defendants: (1) breach of contract based on the denial of coverage; (2) violations of Chapter 541 of the Texas Insurance Code (TIC); (3) violations of Chapter 542 of the TIC; and (4) violations of the Texas Deceptive Trade Practices Act (DTPA). Doc. 16, Am. Compl., ¶¶ 41–76. Based on these claims, Plaintiff seeks $7.5 million in damages, as well as additional damages, interest, costs, and attorneys' fees. *Id.* ¶¶ 88–92. Plaintiff also alleges that Defendants "waived their right to rely on [the] time limitation provisions" in the Policy and are "estopped from denying coverage" based on these provisions. *Id.* ¶¶ 80, 82. Alternatively, Plaintiff asserts that these limitation provisions "should be equitably tolled." *Id.* ¶ 86.

Defendants filed a motion to dismiss (Doc. 22) Plaintiff's operative complaint, and the motion is now fully briefed. Accordingly, the Court considers its below.

## II.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's

complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "The court's review [under Rule 12(b)(6)] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Eur. DAC v. Schiff Hardin, L.L.P.*, 912 F.3d 759, 763 (5th Cir. 2019) (emphasis added) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (cleaned up).

## III.

## ANALYSIS

The Court first turns to the merits of Defendants' motion. As further detailed below, the Court denies Defendants' motion to dismiss any breach-of-contract claim premised on Insuring Agreement (B), as Defendants' argument raises an interpretation issue unsuited for a motion to

dismiss. Likewise, the Court denies Defendants' motion to dismiss Plaintiff's breach-of-contract claim on untimeliness grounds. As detailed below, whether Texas or New York law governs Plaintiff's breach-of-contract claim is likely dispositive of whether Plaintiff's claim for coverage is untimely under the Policy's suit-filing limitation or notice limitation. Because the Court lacks the evidence and briefing necessary to make a choice-of-law determination, the Court cannot rule on the merits of the breach-of-contract claim and denies Defendants' motion to dismiss the claim.

Next, the Court grants in part and denies in part Defendants' motion to dismiss Plaintiff's extracontractual claims. Specifically, the Court dismisses Plaintiff's claims under § 541.060(a)(1) of the TIC, as well as its claims under §§ 17.46(b)(12) and 17.50(a)(3) of the DTPA. But the Court denies Defendants' request to dismiss the remaining extracontractual claims. Finally, the Court overrules Plaintiff's objections to certain evidence offered in Defendants' motion-to-dismiss appendix.

A.    *The Court Denies Defendants' Motion to Dismiss Any Breach-of-Contract Claim Premised on Insuring Agreement (B) Because Interpretation of the Insuring Agreements Is Better Suited to Summary Judgment.*

The Court first turns to the parties' dispute regarding whether Plaintiff may state a breach-of-contract claim under Insuring Agreement (B). Plaintiff alleges a breach-of-contract claim "under either Insuring Agreement (A) or Insur[ing] Agreement (B) . . . ." Doc. 16, Am. Compl., ¶ 42. Defendants, however, contend Plaintiff cannot recover under Insuring Agreement (B) because the Policy "does not cover 'loss caused by Dishonest Acts except when covered by Insuring Agreement (A).'" Doc. 22, Defs.' Mot., 11 (emphasis omitted).

The Court rejects Defendants' argument as premature. For the Court to conclude that Insuring Agreement (B) does not apply here, it must conclude that Plaintiff's losses were, as a matter of law, caused by dishonest acts by a mortgage third party. *See* Doc. 22-1, Defs.' App., 14 (excluding

- 7 -

coverage for "loss caused by Dishonest Acts except when covered by Insuring Agreement (A)"); *id.* at 10 (defining "Dishonest Acts" as acts or omissions "by a Mortgage Third Party" that fall within specified criteria (emphasis omitted)). Such a determination likely requires the Court to decide whether Plaintiff's allegations give rise to coverage under Insuring Agreement (A), which covers "[d]irect financial loss to [Plaintiff] caused by Dishonest Acts of a Mortgage Third Party concerning Mortgage Loans." *Id.* at 9 (emphasis omitted).[3] The parties have hardly briefed this issue, so the Court will not decide it here.

Should the Court find coverage under Insuring Agreement (A), Plaintiff will not be entitled to coverage under Insuring Agreement (B)—coverage under both provisions would be inconsistent with the Policy's language. *See id.* (requiring "Dishonest Acts of a Mortgage Third Party" for coverage under Insuring Agreement (A) (emphasis omitted)); 10, 14 (excluding coverage under Insuring Agreement (B) when it is based on "Dishonest Acts," which are acts or omissions "by a Mortgage Third Party" (emphasis omitted)). Plaintiff appears to acknowledge this in its complaint by pleading alternative relief. *See* Doc. 16, Am. Compl., ¶ 42 (asserting coverage "under either Insuring Agreement (A) *or* Insur[ing] Agreement (B)" (emphasis added)). At the pleading stage, Plaintiff is free to plead "relief in the alternative . . . ." Fed. R. Civ. P. 8(a)(3); *see also* Fed. R. Civ. P. 8(d). Unless or until the Court resolves the coverage issue under Insuring Agreement (A) or concludes, as a matter of law, that Plaintiff's losses arise from "Dishonest Acts" as defined in the Policy,

---

[3] Specifically, to conclude that coverage under Insuring Agreement (B) is excluded, the Court must determine that Plaintiff's losses are "caused by Dishonest Acts," which are limited to acts "by a Mortgage Third Party[.]" Doc. 22-1, Defs.' App., 10, 14 (emphasis omitted). Insuring Agreement (A) covers losses "caused by Dishonest Acts of a Mortgage Third Party," so long as the losses are "direct financial loss[es]" and "concern[] Mortgage Loans." *Id.* at 9 (emphasis omitted). Neither side appears to dispute that the losses were direct and involve mortgage loans.

Plaintiff's breach-of-contract claim based on Insuring Agreement (B) remains. The Court thus **DENIES** Defendants' motion to dismiss the claim.

B.    *Because the Court Lacks the Evidence Necessary to Resolve Choice of Law, the Court Denies Defendants' Motion to Dismiss the Breach-of-Contract Claim.*

The parties' briefing presents a threshold, likely determinative issue: whether New York or Texas law governs Plaintiff's breach-of-contract claim. Defendants contend that pursuant to the choice-of-law clause in the Policy, New York law governs the claim. Doc. 22, Defs.' Mot., 10. Defendants assert that the clause is reasonable and thus enforceable because "sophisticated parties . . . often choose New York law for complex contracts in order to promote efficiency, predictability and uniformity regarding their contractual rights." *Id.* (citation omitted). Plaintiff, however, asserts that if New York law would bar Plaintiff's claim, the choice-of-law clause is unenforceable because New York has no connection to this dispute, Texas has a more significant relationship, and application of New York law would contravene a Texas public policy. Doc. 25, Pl.'s Resp., 11–12. In their reply, Defendants emphasize the reasonableness of contracting for New York law and the fact that Plaintiff brought suit for FMC and McCord's fraud in New York. Doc. 26, Defs.' Reply, 3 n.3.

As a preliminary matter, although Plaintiff raises the choice-of-law issue in the alternative, the Court finds it is likely outcome-determinative here. Plaintiff does not dispute that it failed to file suit within the Policy's suit-filing limitation; rather, Plaintiff argues against the enforceability of the suit-filing limitation. *See* Doc. 25, Pl.'s Resp., 9–14. But based on the record before the Court, New York law would likely uphold the suit-filing limitation while Texas law likely would not.

If analyzed under New York law, the Policy's suit-filing limitation period would likely stand. Under New York law, a suit-filing limitation is enforceable so long as it is reasonable. *See Exec. Plaza,*

*LLC v. Peerless Ins. Co.*, 5 N.E.3d 989, 992 (N.Y. 2014) (citation omitted). Plaintiff asserts that the limitation is unreasonable under New York law because it may require the insured to file suit on a claim before the insurer completes an investigation of the claim. Doc. 25, Pl.'s Resp., 10 (citation omitted). In support, Plaintiff relies upon *Executive Plaza*, a case in which the New York Court of Appeals held a limitations period unreasonable where it expired prior to the insured's ability to satisfy a condition precedent to filing suit—the complete replacement of property. *See* 5 N.E.3d at 991. The New York Court of Appeals reasoned that a "'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim." *Id.* at 992.

But Plaintiff's reliance upon *Executive Plaza* appears misplaced because Plaintiff does not allege that it could not fulfill a condition precedent to seeking coverage within the agreed-upon limitations period. Rather, Plaintiff's argument is that the limitations period is unreasonable because it required Plaintiff to file suit before Defendants completed the investigation of Plaintiff's claim. Doc. 25, Pl.'s Resp., 10. But the New York Court of Appeals squarely rejected this argument in *Blitman Construction Corporation v. Insurance Company of North America*, 66 N.Y.2d 820, 823 (N.Y. 1985), reasoning that "an insured . . . can protect itself" in this situation "by either beginning an action before expiration of the limitation period or obtaining from the carrier a waiver or extension of its provision." *Id.*; *see also Exec. Plaza*, 5 N.E.3d at 991 (approving of the reasoning of *Blitman*). As a result, based on the current record, New York law would likely bar Plaintiff's breach-of-contract claim as untimely under the suit-filing limitation. *See, e.g.*, *Watkins v. Allstate Ins. Co.*, 68 N.Y.S.3d 381 (2nd Dep't 2017) (unpublished table decision) (affirming dismissal of claim where the plaintiff failed to raise a fact issue regarding the reasonableness of a limitations period).

Under Texas law, however, the suit-filing limitation would likely be unenforceable. In Texas,

- 10 -

parties "may not enter a . . . contract . . . that purports to limit the time in which to bring suit on the . . . contract . . . to a period shorter than two years." Tex. Civ. Prac. & Rem. Code § 16.070(a). Accordingly, a contract provision purporting to establish a limitations period of less than two years is void, and Texas's common-law, four-year limitations period will govern instead. *See, e.g.*, *Admin. Servs. of N. Am., Inc. v. Hartford Fidelity & Bonding Co.*, 245 F. App'x 384, 386 (5th Cir. 2007) (per curiam); *Legent Comm, LLC v. Billing Concepts, Inc.*, 2019 WL 3207799, at *4 (W.D. Tex. July 16, 2019).[4]

Accordingly, whether New York or Texas law governs Plaintiff's breach-of-contract claim is likely determinative of whether Plaintiff's claim is subject to dismissal for untimeliness under the suit-filing limitation.[5]

Though Defendants raise an alternative ground for dismissal—Plaintiff's failure to comply with the notice limitation—the viability of this argument also depends on which state's law applies. Specifically, depending on how the Policy is characterized, Texas law may require Defendants to show prejudice in order to defeat a claim based on a lack of timely notice. In Texas, "the impact that untimely notice has on coverage depends on the type of insurance policy[,]" as courts treat

---

[4] The Policy contains a savings clause stating: "If any limitation embodied in this Policy is prohibited by any law controlling the construction hereof such limitation shall be deemed to be amended so as to equal the minimum period of limitation provided by such law." Doc. 22-1, Defs.' App., 16. But courts in Texas have found such clauses too vague to identify a limitations period and instead apply the general four-year statute of limitations. *See, e.g.*, *Duster v. Aetna Ins. Co.*, 668 S.W.2d 806, 806–07 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd); *Douskos v. Eden Park Ins. Co.*, 2001 WL 699092, at *2–3 (W.D. Tex. June 15, 2001). Additionally, the parties have not briefed the effect of a four-year suit limitation, but nothing before the Court indicates that Plaintiff's claim would be barred by a four-year suit limitation.

[5] Plaintiff alleges Defendants have either waived the suit-filing limitation or are estopped from relying on it now. *See* Doc. 16, Am. Compl., ¶¶ 78–84. Additionally, Plaintiff alleges equitable tolling of the suit-filing limitation period. *See id.* ¶¶ 85–86. Until the Court resolves the choice-of-law issue and receives summary-judgment briefing on these arguments, it will not evaluate them.

occurrence policies differently than claims-made policies. *Matador v. Petro. Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 (5th Cir. 1999); *compare Cooper Indus. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2016 WL 3405295, at *9 (S.D. Tex. June 21, 2016) (treating a commercial-crime policy like an occurrence policy and requiring the insurer to show prejudice), *aff'd on other grounds*, 876 F.3d 119 (5th Cir. 2017), *with Nicholas Petro., Inc. v. Mid-Continent Cas. Co.*, 2015 WL 4456185, at *6 (Tex. App.—Dallas July 21, 2015, no pet.) (analyzing a claims-made policy and declining to impose a prejudice requirement). Here, the parties do not brief whether the Policy is, in effect, a claims-made policy. *See generally* Doc. 22, Defs.' Mot.; Doc. 25, Pl.'s Resp.; Doc. 26, Defs.' Reply. And the Court is not in a position to make such a determination. Thus, under Texas law, Plaintiff's claim for coverage is not necessarily barred due to a failure to comply with the notice provision. As a result, under either of Defendants' grounds for dismissal based on untimeliness, choice of law remains a threshold issue. For the reasons that follow, however, the Court is not equipped to make a choice-of-law determination at this juncture.

In resolving a choice-of-law issue, the Court applies Texas choice-of-law rules. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Texas courts 'permit choice-of-law agreements and the default position is that they are enforceable.'" *Demond v. Infiniti HR, LLC*, 2018 WL 4145053, at *3 (N.D. Tex. Aug. 30, 2018) (citation omitted). "To render a choice-of-law provision unenforceable, a party must satisfy the standards in [§ 187] of the Restatement (Second) of Conflicts of Laws." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 & n.7 (5th Cir. 2015). Section 187 provides:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

- 12 -

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . unless either[:]

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971).

Here, the Court lacks the evidence and briefing necessary to make several of the determinations called for by § 187. As a preliminary matter, neither side addresses the applicability of § 187(1). *See generally* Doc. 22, Defs.' Mot; Doc. 25, Pl.'s Resp. Further, with respect to § 187(2)(a), the Court lacks the evidence necessary to determine whether New York has a "substantial relationship to the parties" or whether there is a "reasonable basis" for choosing New York law. *See* § 187(2)(a). Plaintiff argues that New York lacks any connection to the parties or the Policy. *See* Doc. 25, Pl.'s Resp., 11. Meanwhile, Defendants rely upon the New York choice-of-law clause as evidence that this dispute relates to New York. *See* Doc. 26, Defs.' Reply, 3 n.3. Defendants also contend that since Plaintiff sued on the underlying fraud in New York, "it cannot now argue [New York] law has no connection." *Id.* But neither party has briefed whether the underlying fraud action, which arose *after* the parties agreed to the Policy, creates a "substantial relationship to the parties or the transaction[.]" *See* § 187(2)(a). Nor have the parties fleshed out whether there is a "reasonable basis" for choosing New York law—Defendants cite only to the fact that New York has a well-established body of commercial law, but they provide no binding authority suggesting this alone constitutes a reasonable basis. Doc. 22, Defs.' Mot., 10; *cf. Exxon Mobil Corp. v. Drennen*, 452

- 13 -

S.W.3d 319, 325 (Tex. 2014) (finding a reasonable basis for a New York choice-of-law clause based on New York's "well-developed . . . body of law" along with *two other* case-specific reasons for choosing New York law).

Likewise, the Court lacks evidence necessary to analyze the three-part inquiry of § 187(2)(b). Under this subsection, a choice-of-law clause will not govern where: "1) another state has a materially greater interest than the chosen state in determining the particular issue; 2) application of the law of the chosen state would violate a fundamental policy of the state with the materially greater interest; and 3) under the criteria listed in [§§] 6 and 188 of the Restatement, the state with the materially greater interest would be the state of the applicable law had the parties not made an effective choice-of-law agreement." *Taylor v. CIT Grp./Sales*, 77 F.3d 477, 1995 WL 798569, at *2 (5th Cir. 1995) (unpublished table decision).

As to the first and third elements, Plaintiff contends that Texas has a materially greater interest in this dispute because Plaintiff is "a Texas-based business, doing business in Texas," that seeks to recover losses "ultimately incurred . . . in Texas." Doc. 25, Pl.'s Resp., 12. In support, Plaintiff cites to the allegations in its complaint. *See id.* Based solely on Plaintiff's allegations, however, the Policy's connection to Texas is unclear. Plaintiff alleges that it "is a North Carolina limited liability company with its principal place of business in Dallas, Texas." Doc. 16, Am. Compl., ¶ 1.[6] But aside from the allegation that Plaintiff's offices are located in Texas and that "all of the events relevant to this cause of action took place in Dallas, Texas," Doc. 16, Am. Compl., ¶ 9,

---

[6] Defendants have already represented to the Court, based on information provided by Plaintiff, that Plaintiff's sole member is a citizen of Delaware and California, *see* Doc. 7, Resp., 2, but Plaintiff appears to dispute this point now. *See* Doc. 25, Pl.'s Resp., 12 n.2.

Plaintiff's complaint does not provide facts permitting the Court to analyze the Policy's relationship to Texas in light of the factors of § 188. *See, e.g., Uniwest Mortg. Co. v. Dadecor Condos., Inc.*, 877 F.2d 431, 435–36 (5th Cir. 1989). Given this determination is such a fact-sensitive inquiry with the potential to dispose of Plaintiff's claim, it is not suited for resolution at the motion-to-dismiss stage.

Overall, the parties have not presented the Court with evidence sufficient to determine whether New York or Texas law governs Plaintiff's breach-of-contract claim. The Court thus declines to resolve the choice-of-law issue at this stage of proceedings and **DENIES** Defendants' motion to dismiss the breach-of-contract claim.

C.     *The Court Grants in Part and Denies in Part Defendants' Motion to Dismiss the Statutory Claims.*

Now, the Court turns to Plaintiff's statutory claims. Before turning to the sufficiency of Plaintiff's allegations, the Court addresses two preliminary matters. First, Defendants argue that the statutory claims are subject to dismissal because this entire action is governed by New York law. But the Court has already rejected this contention as a basis for dismissal in light of the lack of evidence necessary to make such a determination. *See supra* Section III.B. Further, the New York choice-of-law clause in the Policy covers only disputes "concerning the interpretation of" the Policy. Thus, it does not appear to encompass Plaintiff's extracontractual claims, which do not ask the Court to interpret the Policy. *See* Doc. 22-1, Defs.' App., 28; *see, e.g., C-Bons Int'l Golf Grp. v. Lexington Ins. Co.*, 2019 WL 5427574, at *4 (N.D. Tex. Oct. 22, 2019) (holding that a choice-of-law clause governing "construction and interpretation of the contract" did not apply to plaintiff's TIC extracontractual claims). Accordingly, the Court assumes, for purposes of this motion, that Texas law governs the statutory claims.

Second, Defendants contend that these claims are subject to dismissal because Plaintiff's

breach-of-contract claim fails. Doc. 22, Defs.' Mot., 21, 23–24, 24–25. Because the Court denies Defendants' motion to dismiss the breach-of-contract claim, the Court rejects this argument as a basis for dismissal of the statutory claims.

Below, the Court analyzes whether Plaintiff has sufficiently alleged its claims under: (1) Chapter 541 of the TIC, the Unfair Settlement Practices Act; (2) Chapter 542 of the TIC, the Prompt Payment of Claims Act; and (3) the DTPA.

<u>1.</u>      <u>Unfair Settlement Practices Act</u>

*a.      Section 541.060(a)(1)*

Plaintiff alleges Defendants violated § 541.060(a)(1) by "represent[ing] a type of loss is covered and then fail[ing] to cover such a loss." Doc. 16, Am. Compl., ¶ 51. Section 541.060(a)(1) provides a cause of action against an insurer that "misrepresent[s] to a claimant a material fact or policy provision relating to coverage at issue[.]"

Plaintiff's § 541.060(a)(1) claim fails, because Plaintiff has not identified a specific misrepresentation of material fact or misrepresentation of a policy provision. *See, e.g., Petree v. Metro. Lloyds Ins. Co. of Tex.*, 2016 WL 3090592, at *4 (N.D. Tex. June 2, 2016) (finding § 541.060(a)(1) claim insufficiently pleaded where the plaintiffs "fail[ed] to identify a single statement or any specific misrepresentation"); *Thomas v. State Farm Lloyds*, 2015 WL 6751130, at *3 (N.D. Tex. Nov, 4, 2015) (explaining that "an insurer does not misrepresent a policy when it disagrees with the insured party as to whether the policy covers a claim"). Rather, Plaintiff alleges that Defendants misrepresented coverage "by wrongfully denying coverage[.]" Doc. 16, Am. Compl., ¶ 36. Accordingly, Plaintiff has not stated a claim under § 541.060(a)(1), and the Court **GRANTS** Defendants' motion to dismiss the claim.

- 16 -

b.    *Section 541.060(a)(2)(A)*

Next, Plaintiff alleges that Defendants unreasonably delayed in seeking settlement under the Policy when liability was reasonably clear and thus violated § 541.060(a)(2)(A). Doc. 16, Am. Compl., ¶¶ 53–55. Specifically, Plaintiff asserts that Defendants "made unreasonable and unnecessary requests for 'additional information'" even though Plaintiff had already provided the information necessary for a coverage determination. *Id.* ¶ 54. Plaintiff further alleges that Defendants "possessed all the relevant information regarding [Plaintiff's] notice of the claim from the onset," yet Defendants waited two years to deny coverage. *Id.* ¶ 55. Defendants contend that Plaintiff fails to sufficiently allege a § 541.060(a)(2)(A) violation because Defendants' liability "was not 'reasonably clear.'" Doc. 22, Defs.' Mot., 22.

The Court rejects Defendants' argument at the motion-to-dismiss stage, because assessing whether liability was reasonably clear is an inquiry best suited for summary judgment. *See Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 806 (N.D. Tex. 2010) (explaining that "[w]hether an insurer acted in bad faith . . . after its liability became reasonably clear is a question for the factfinder" unless "there are no genuine issues of material fact" (citations omitted)); *see also United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F. Supp. 3d 584, 594–95 (S.D. Tex. 2015) ("Whether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question for the fact-finder." (alteration incorporated) (citation omitted)), *aff'd*, 624 F. App'x 225 (5th Cir. 2015) (per curiam). Indeed, both cases cited by Defendants in support of dismissal are cases in which a court examined whether the plaintiff's § 541.060(a)(2)(A) claim survived summary judgment—not a motion to dismiss. *See* Doc. 22, Defs.' Mot., 22 (citing *Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 576–79 (W.D. Tex. 1999);

*Hall Arts Ctr. Office, LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 998 (N.D. Tex. 2018)). The Court thus **DENIES** Defendants' motion to dismiss the § 541.060(a)(2)(A) claim.

        c.       *Section 541.060(a)(7)*

Plaintiff also alleges that Defendants "failed to conduct a reasonable investigation" of Plaintiff's claim in violation of § 541.060(a)(7) and instead "conducted a pre-textual result-oriented investigation" that culminated in "a denial based on time[-]limitation provisions." Doc. 16, Am. Compl., ¶ 56. Plaintiff alleges that Defendants, through their lengthy investigation, "strung [Plaintiff] along so that" the Policy's suit-filing limitation would pass. *See id.* ¶ 38. Defendants argue that to the extent Plaintiff's § 541.060(a)(7) claim is premised on Defendants' failure to perform a "thorough investigation," the claims fails in light of Plaintiff's "allegation that [Defendants] sought too much information from [Plaintiff] over the course of the" investigation. Doc. 22, Defs.' Mot., 23.

Again, the Court rejects Defendants' argument at this juncture because it challenges the ultimate reasonableness of Defendants' investigation, rather than whether Plaintiff has sufficiently alleged a claim under § 541.060(a)(7). Put differently, Defendants ask the Court to weigh in on the reasonableness of their investigation: Was the length of the investigation unreasonable in light of Defendants' time-limitation-based denial and multiple requests for information? The Court cannot and will not attempt to answer this question at the motion-to-dismiss stage. Accordingly, the Court **DENIES** Defendants' motion to dismiss the § 541.060(a)(7) claim. *See, e.g.*, *Taboada v. State Farm Lloyds*, 2020 WL 264688, at *5 (S.D. Tex. Jan. 17, 2020) (denying motion to dismiss § 541.060(a)(7) claim regarding the reasonableness of the investigation where the plaintiff alleged some facts to support its allegation of "an outcome-oriented investigation").

2.    Prompt Payment of Claims Act

Plaintiff alleges Defendants violated the Prompt Payment of Claims Act (PPCA) by "failing to timely accept or reject its claim and by failing to timely pay its claim." Doc. 16, Am. Compl., ¶ 67. Defendants assert that Plaintiff's PPCA claim fails because the PPCA does not apply to fidelity bonds, and Plaintiff seeks coverage under "Insuring Agreement (A)," which, according to Defendants, constitutes a fidelity bond. *See* Doc. 22, Defs.' Mot., 24 (citing Tex. Ins. Code § 542.053(a)(4) and *RealPage Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 2020 WL 1550798, at *2, *5 (N.D. Tex. Apr. 1, 2020)). Plaintiff, on the other hand, contends that under this Court's definition of "fidelity bond" in *RealPage*, the Policy is not a fidelity bond. Doc. 25, Pl.'s Resp., 16.

Defendants have not shown that Insuring Agreement (A) is, as a matter of law, a fidelity bond. In *RealPage*, this Court applied the following definition of "fidelity bond": "A bond to indemnify an employer or business for loss due to embezzlement, larceny, or gross negligence by an employee or other person holding a position of trust." *RealPage*, 2020 WL 1550798, at *4 (quoting *Fidelity bond*, BLACK'S LAW DICTIONARY (11th ed. 2019)). Applying this definition to the insuring agreements at issue in *Realpage*, this Court concluded that the defendant–insurer had not established that the agreements were fidelity bonds. *See id.* at *5.

The Court reaches the same conclusion here and holds that Plaintiff's PPCA claim survives Defendants' motion to dismiss. Insuring Agreement (A), titled "<u>FIDELITY</u>," insures against "[d]irect financial loss to [Plaintiff] caused by Dishonest Acts of a Mortgage Third Party concerning Mortgage Loans." Doc. 22-1, Defs.' App., 9 (emphasis omitted). The Policy provides a few definitions of a "Mortgage Third Party," *see id.* at 12, but based on these definitions, it is unclear whether a "Mortgage Third Party" may be a party "holding a position of trust." *Realpage*, 2020 WL 1550798,

at *4 (citation omitted).  Neither Plaintiff nor Defendants address this issue. Nor do the parties address the fact that the Policy specifically excludes "loss caused by any dishonest or fraudulent acts of a director, officer or employee of [Plaintiff] or in which any such person acted in collusion"—the kind of loss that fidelity bonds insure against. Doc. 22-1, Defs.' App., 13–14; *see RealPage*, 2020 WL 1550798, at *3 (discussing the definition of a fidelity bond). Given the Court's doubt as to whether Insuring Agreement (A) is a fidelity bond, the Court **DENIES** Defendants' motion to dismiss the PPCA claim.[7]

### 3.   DTPA

Finally, Plaintiff alleges Defendants violated the DTPA by: (1) "[r]epresenting that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law"; (2) "[e]ngaging in an unconscionable action or course of action that . . . took advantage of [Plaintiff's] lack of knowledge, ability, experience, or capacity to a grossly unfair degree"; and (3) violating Chapter 541 of the TIC. Doc. 16, Am. Compl., ¶ 74 (citing Tex. Bus. & Com. Code §§ 17.46(b)(12), 17.45(5), 17.50(a)(1), 17.50(a)(3), 17.50(a)(4)). The Court addresses each DTPA claim below.

#### a.   *Section 17.46(b)(12)*

Plaintiff alleges Defendants are liable under § 17.46(b)(12) for "[r]epresenting that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law[.]" Doc. 16, Am. Compl., ¶ 74.

The Court dismisses this DTPA claim because Plaintiff has recited the relevant statutory

---

[7] Defendants are free to re-assert their fidelity-bond argument at summary judgment.

language without alleging any specific representation upon which Plaintiff relied. In order to meet the Rule 8(a) pleading standard, Plaintiff must give more than a "formulaic recitation of the statutory language[,]"—it must allege "specific conduct to state a claim for DTPA violations[.]" *Spring St. Apts Waco, LLC v. Phila. Indem. Ins. Co.*, 2017 WL 1289036, at *6 (W.D. Tex. Apr. 6, 2017). Here, Plaintiff has not done so. As noted above, Plaintiff has not alleged any specific misrepresentation of any material fact or of any policy provision. *See supra* Section III.C.1.a; *see, e.g.*, *Petree*, 2016 WL 3090592, at *4. Therefore, Plaintiff has not stated a claim under this provision of the DTPA, and the Court **GRANTS** Defendants' motion to dismiss this DTPA claim.

        *b.*     *Section 17.50(a)(3)*

Next, Plaintiff alleges Defendants violated § 17.50(a)(3) by acting unconscionably. Doc. 16, Am. Compl., ¶ 74. Section 17.50(a)(3) provides a cause of action for a consumer that suffers damages resulting from "any unconscionable action[.]" Tex. Bus. & Com. Code § 17.50(a)(3).

The Court dismisses this DTPA claim, too, because Plaintiff's "unconscionability claim is premised on conduct that occurred . . . after the inception of coverage under the [Policy]." *Tolbert ex. rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 657 F.3d 262, 272 (5th Cir. 2011). The Fifth Circuit has found that unconscionability claims "require[] that the seller take advantage of lack of knowledge, ability, experience, or capacity of a person '*at the time of the sale*.'" *Tolbert*, 657 F.3d at 272 (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (emphasis in original)). In support of its unconscionability claim, Plaintiff alleges that Defendants "failed to conduct a reasonable investigation," which led them to "wrongfully den[y] coverage of [Plaintiff's] claim[.]" Doc. 16, Am. Compl., ¶¶ 35, 56. However, all of Plaintiff's allegations of misconduct relate to the handling of its claim for coverage—not the sale of the Policy. *See, e.g.*, Doc. 16, Am. Compl.,

¶¶ 32–33. Accordingly, Plaintiff's unconscionability claim under the DTPA fails, and the Court **GRANTS** Defendant's motion to dismiss the claim.

         c.       *Section 17.50(a)(4)*

Finally, Plaintiff alleges Defendants are liable under the DTPA for violating Chapter 541 of the Texas Insurance Code. Doc. 16, Am. Compl., ¶ 74. Defendants move to dismiss this DTPA claim as insufficiently alleged. Doc. 22, Defs.' Mot., 25.

The Court rejects Defendants' argument. Section 17.50(a)(4) confers a cause of action for a consumer that suffers damages as a result of a violation of Chapter 541 of the TIC. Tex. Bus. & Com. Code § 17.50(a)(4). As fully discussed above, Plaintiff has brought three claims under Chapter 541: § 541.060(a)(1), § 541.060(a)(2)(A), and § 541.060(a)(7). *See supra* Section III.C.1. While the Court has dismissed the misrepresentation claim under § 541.060(a)(1) due to Plaintiff's failure to state a claim, the other two claims remain viable. Because two of Plaintiff's Chapter 541 claims survive Defendants' motion to dismiss, so must this DTPA tie-in claim. Accordingly, the Court **DENIES** Defendant's motion to dismiss the § 17.50(a)(4) claim.

D.     *The Court Overrules Plaintiff's Evidentiary Objections as Moot.*

In connection with their motion to dismiss, Defendants submitted an appendix containing documentary evidence. *See generally* Doc. 22-1, Defs.' App. Plaintiff agrees that the Court may consider the Policy provided in Defendants' appendix but objects to several other pieces of evidence as irrelevant. Doc. 25, Pl.'s Resp., 2. Because the Court has not relied upon any evidence presented in the appendix aside from the Policy itself in resolving the motion to dismiss, the Court **OVERRULES** Plaintiff's objections as **MOOT**.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion (Doc. 22). Additionally, the Court overrules Plaintiff's objections as moot. Given the unresolved choice-of-law issues in this case, the Court will permit the parties to conduct two rounds of summary-judgment briefing. The first round will consist of one summary-judgment motion, to be filed by Plaintiff, limited solely to choice-of-law arguments. The second round will be for either side to file a summary-judgment motion in light of the Court's resolution of choice of law. The Court will set a deadline for both rounds of briefing in its standard scheduling order. To expedite resolution of this case, the Court intends to require Plaintiff's summary-judgment, choice-of-law motion within forty-five (45) days of its entry of the scheduling order.

SO ORDERED.

SIGNED: June 22, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE