UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAPLOC LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-CV-3372-B |
| | § | |
| LIBERTY MUTUAL INSURANCE | § | |
| EUROPE LIMITED and CERTAIN | § | |
| UNDERWRITERS AT LLOYD'S OF | § | |
| LONDON, SYNDICATE 2488 CGM, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION & ORDER

Before the Court is Plaintiff CapLOC LLC ("CapLOC")'s Motion for Partial Summary Judgment (Doc. 37) on the choice-of-law issue raised by the Court in the June 22 Order. Doc. 27, Mem. Op. & Order, 23. CapLOC asks the Court to apply Texas law while Defendants Liberty Mutual Insurance Europe Limited and Certain Underwriters at Lloyd's of London, Syndicate 2488 CGM (collectively the "Insurers") ask the Court to apply New York law according to the choice-of-law clause in the insurance policy. Because—as outlined below—the Court finds Texas law should govern the disputes in this case, the Court **GRANTS** CapLOC's Motion for Partial Summary Judgment.

# I.

# BACKGROUND[1]

A.    *The Policy*

This is an insurance dispute arising from mortgage fraud. Plaintiff serves as a "warehouse" lender for mortgage lenders, meaning Plaintiff "provides mortgage lenders with short-term, revolving lines of credit to enable . . . mortgage lender[s] to fund and close mortgage loans." Doc. 16, Am. Compl., ¶ 9. To protect against the risk of fraudulent loans, Plaintiff purchased "a Financial Institutions Third Party Catastrophe Blanket Bond Insurance Policy" (hereinafter "the Policy") from Defendant Certain Underwriters at Lloyd's of London, Syndicate 2488 CGM. *Id.* ¶¶ 7, 10. The Policy was effective June 6, 2017, to June 6, 2018. *Id.* ¶ 7. Under the Policy, Defendants "agreed to indemnify [Plaintiff] for 'direct financial loss' . . . discovered by [specified CapLOC officers] during the policy period." *Id.* ¶ 12. The Policy excludes "loss sustained by [Plaintiff]" before June 6, 2017. Doc. 22-1, Defs.' App., 15, 20. Further, the Policy contains a choice-of-law clause, which states: "[A]ny dispute concerning the interpretation of this Certificate shall be governed by the laws of New York . . . ." *Id.* at 28.

The Policy has two insuring agreements relevant here. First, Insuring Agreement (A), titled "<u>FIDELITY</u>," insures against "[d]irect financial loss to [Plaintiff] caused by Dishonest Acts of a Mortgage Third Party concerning Mortgage Loans." *Id.* at 9 (emphasis omitted). Second, Insuring Agreement (B), titled "<u>MORTGAGE FRAUD</u>," covers "[d]irect financial loss to [Plaintiff] caused by [Plaintiff] or any Mortgage Third Party accepting, receiving, delivering, or otherwise acting or

---

[1] The Court draws the facts from Plaintiff's amended complaint (Doc. 16) and Defendants' appendix (Doc. 22-1).

relying in good faith and in the course of business upon any: (a) Fraudulent Mortgage; or (b) Fraudulent Written Instructions."[2] *Id.* (emphasis omitted).

Further, the Policy contains two relevant time-limitation provisions. The first (hereinafter "the notice limitation"), provides: "At the earliest practicable moment, not to exceed sixty (60) days after discovery of loss that exceeds or appears reasonably likely to exceed the Single Loss Retention [of $1,000,000], [Plaintiff] shall give [Defendants] notice thereof." *Id.* at 16 (emphasis omitted); *see id.* at 7. The second (hereinafter "the suit-filing limitation") imposes a window of time for Plaintiff to bring any "[l]egal proceedings for the recovery of any loss" under the Policy. *Id.* at 16. Specifically, under the suit-filing limitation, Plaintiff may not bring suit "prior to the expiration of sixty (60) days after the original proof of loss is filed with [Defendants] or after the expiration of twenty-four (24) months from the discovery of such loss." *Id.* Under the Policy, "[d]iscovery occurs when the Chief Executive Officer, General Counsel or President of the warehouse lending division of [Plaintiff] first becomes aware of facts or circumstances which would cause a reasonable person to believe that a loss of a type covered by [the] Policy has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred." *Id.* at 15.

B.     *The Claim for Coverage*

Plaintiff, serving as a warehouse lender, "agreed to provide a line of credit to fund new loans originated by First Mortgage Company, LLC ('FMC')," a mortgage lending company owned by Ron McCord ("McCord"). Doc. 16, Am. Compl., ¶¶ 22–23. Under Plaintiff's agreement with FMC, "FMC received loan applications from consumers to apply to purchase residential real estate or refinance their current mortgage." *Id.* ¶ 24. Then, "[i]f an application met the requirements of the

---

[2] The Policy provides definitions for "Dishonest Acts," "Fraudulent Mortgage," "Fraudulent Written Instructions," "Mortgage Loan," and "Mortgage Third Party," among other terms. *See id.* at 10–12.

parties' agreements and [Plaintiff's] guidelines, FMC . . . would submit a written request to [Plaintiff] to fund the loans." *Id.* From March 30, 2017, to June 6, 2017, Plaintiff "funded 2,513 loans totaling more than $468 million" for FMC. *Id.* ¶ 23. Unbeknown to Plaintiff, however, FMC requested funding for ineligible loans, and FMC and McCord "intentionally concealed the nature of" these loans. *Id.* ¶¶ 25–26. Relying upon the requests for funding, "[Plaintiff] authorized wire transfers" totaling $34 million to purchase the ineligible loans. *Id.* ¶ 27. After learning that it had funded ineligible loans, Plaintiff demanded that FMC and McCord repurchase the loans, but they refused. *Id.* ¶ 28. At some point, Plaintiff discovered that FMC and its related entities had not only induced Plaintiff to fund ineligible loans, but "approximately half of the [u]nauthorized [l]oans were outright fraudulent." *Id.* ¶ 29.

In light of FMC and McCord's fraudulent conduct, Plaintiff filed a civil lawsuit in the United States District Court for the Southern District of New York on July 31, 2017. *Id.* ¶ 30. After the lawsuit was filed, Plaintiff further "discovered that FMC/McCord stole money from borrowers who sent in their money to pay off their mortgage loans, only for FMC/McCord to pocket the money" instead of applying it to the borrowers' debt. *Id.* ¶ 31. As a result of FMC and McCord's conduct, Plaintiff claims approximately $34 million in losses. *Id.*

On June 25, 2018, Plaintiff notified Defendants of its claim for coverage under the Policy to recover for the losses caused by FMC and McCord's scheme. *Id.* ¶ 32. Prior to this point, Plaintiff was unaware—"for a variety of reasons, including personnel turnover"—of the applicability of the Policy to its losses. *Id.* Plaintiff alleges that despite its full cooperation with Defendants' investigation of Plaintiff's claim, such as providing additional information to Defendants four different times in 2019, Defendants "continued delaying payment of [Plaintiff's claim] by unnecessarily request[ing] even

more information." *Id.* ¶¶ 33–34 (emphasis omitted). Finally, on March 2, 2020, Defendants denied coverage of Plaintiff's claim "based on non-substantive time limitation provisions." *Id.* ¶¶ 35, 38. Plaintiff alleges that Defendants "strung [Plaintiff] along" by conducting a twenty-month investigation of its claim that culminated in a denial premised on the timing of its claim. *See id.* ¶ 38.

Several months after the denial of coverage, Plaintiff filed suit against Defendants in Texas state court. Doc. 1-2, Pet. Defendants thereafter removed the action to this Court based on diversity jurisdiction. Doc. 1, Notice of Removal, 1–2. In its operative complaint, Plaintiff alleges the following claims against Defendants: (1) breach of contract based on the denial of coverage; (2) violations of Chapter 541 of the Texas Insurance Code ("TIC"); (3) violations of Chapter 542 of the TIC; and (4) violations of the Texas Deceptive Trade Practices Act. Doc. 16, Am. Compl., ¶¶ 41–76. Defendants moved to dismiss these claims and the Court denied the motion for the breach-of-contract claim because of the need for the parties' to further brief the choice-of-law issue. *CapLOC LLC v. Liberty Mut. Ins. Eur. Ltd.*, 2021 WL 2551591, at *8 (N.D. Tex. June 22, 2021). The Court directed the parties to file a motion for partial summary judgment limited to the choice-of-law issue. *Id.* at *11. The motion is now fully briefed. Accordingly, the Court considers it below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary-judgment movant bears the burden of proving that no genuine issue of

material fact exists. *Latimer v. Smithkline & Fr. Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks omitted).

Once the summary-judgment movant has met this burden, the burden shifts to the nonmovant to "go beyond the pleadings and designate specific facts" showing that a genuine issue exists. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (citations omitted). Instead, the nonmoving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). "[C]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations incorporated and quotations marks omitted). But the court need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation and quotation marks omitted). If the nonmovant is unable to make the required showing, the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

Choice of law is a threshold inquiry in diversity cases. *See Faloona by Fredrickson v. Hustler Mag., Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) ("At the threshold in this diversity jurisdiction case, we must determine applicable law by applying Texas choice-of-law rubrics." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941))). When sitting in diversity jurisdiction, a federal court must apply the choice-of-law rules of the forum state—in this case, Texas. *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) (citing *Klaxon*, 313 U.S. at 496).

Where the potentially applicable laws are inconsistent,[3] Texas courts decide choice-of-law issues by using the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws ("Restatement"). *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990). Courts apply the test issue-by-issue. *See Webb v. Rodgers Mach. Mfg. Co.*, 750 F.2d 368, 374 n.10 (5th Cir. 1985). Thus, the Court analyzes each issue individually. *See Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) ("We leave open the question of which state's law the trial court should apply to the particular substantive issues to be resolved below.").

CapLOC raises three arguments for why the Court should apply Texas law instead of New York law. Doc. 37, Pl.'s Mot., 6–19. First, CapLOC argues that the issue[4] in this case—"enforceability of the notice-of-claim and suit-limiting provisions"—cannot be resolved by a

---

[3] A Texas court must first determine whether Texas law is inconsistent with another forum's law. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984), *superseded by* TEX. CIV. PRAC. & REM. CODE ANN. §§ 33.001–.004. The Court already undertook this analysis when resolving the motion to dismiss and found the laws in conflict. *See CapLOC*, 2021 WL 2551591, at *5–6. The Court does not repeat the analysis here.

[4] The Court analyzes both provisions together as one single issue because the analysis would not change if addressed separately.

choice-of-law contractual provision. *Id.* at 7. Second, CapLOC argues that New York has no substantial relationship to the parties or the transaction and that the choice-of-law provision is therefore unenforceable under § 187(2)(a). *Id.* at 7–10. Third and in the alternative to the second argument, CapLOC argues that under § 187(2)(b) the result from the application of New York law would offend a fundamental policy of Texas. *Id.* at 10–19.

Because the Court finds no substantial relationship or reasonable basis for the choice of New York, the Court only addresses the first two arguments.

A.    *Section 187(1) of the Restatement Does Not Render the Choice-of-Law Clause Unenforceable*

Section 187(1) of the Restatement reads: "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(1). "Examples of issues that cannot be resolved by contractual choice-of-law provisions include capacity, enforceability, formalities, and validity." *Gator Apple, LLC v. Apple Tex. Rests.*, 442 S.W.3d 521, 532 (Tex. App.—Dallas 2014, pet. denied).

CapLOC succinctly argues that the enforceability of the notice and suit-filing limitations provisions could not be resolved through an explicit agreement. Doc. 37, Pl.'s Mot., 7. Further, CapLOC contends that the Insurers' failure to contest this argument, "remove[s] the Policy from Section 187(1)'s general rule of enforceability." Doc. 44, Pl.'s Reply, 4. Therefore, CapLOC claims that § 187(1) "does not require the application of New York law." Doc. 37, Pl.'s Mot., 7.

The Insurers retort that "insurance policies typically specify when an insured must notify the insurer of a claim or potential claim for coverage, and parties can agree in written contracts to a

- 8 -

limitations period shorter than that prescribed by statute." Doc. 42, Defs.' Resp., 14. The Insurers also point to two cases in which courts enforced notice and suit-filing limitations provisions under Texas and New York law. *Id.* at 14–15. Section 187(1), the Insurers conclude, therefore "requires the application of New York law." *Id.* at 15.

The parties disagree about how to define the issues with the notice and suit-filing clauses. CapLOC defines the issue as one of enforceability, Doc. 37, Pl.'s Mot., 7, while the Insurers define the issue as one about "rights and obligations . . . and applicable coverage defenses." Doc. 42, Defs.' Resp., 14. As this Court has explained, how the Policy interacts with Texas law will determine the enforceability of the clauses. *See* Doc. 27, Mem. Op. & Order, 23. Enforceability is not an issue the parties could have resolved through explicit agreement. *See Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 n.2 (Tex. 2014) (finding this section did not apply to whether the choice-of-law provision for an incentive program was enforceable due to similarity to the enforceability issue in *DeSantis*). Therefore, Section 187(1) does not control the analysis of the case.

B.    *Section 187(2)(a) of the Restatement Renders the Choice-of-Law Provision Unenforceable*

The "default position is that choice-of-law provisions should be enforced." *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580–81 (5th Cir. 2015). However, parties "cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement." *DeSantis*, 793 S.W.2d at 677. To render a contract provision unenforceable under section 187(2)(a), a party must demonstrate that "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(a).

- 9 -

CapLOC argues Texas has the more substantial relationship between the parties and the transaction than does New York. Doc. 37, Pl.'s Mot., 7–8. Specifically, CapLOC avers that "New York had no relation to CapLOC, [Insurers], or the Catastrophe Policy" and "New York's 'reputation as an international commercial center,'" does not justify applying New York law. *Id.* at 8–9 (quoting *3D/Int'l, Inc. v. Romano*, 811 F. App'x 244, 250 (5th Cir. 2020)). CapLOC further contends the instant case is distinguishable from the *Drennen* case because there is no "direct link between the underlying policy and New York." *Id.* at 9–10. Lastly, even though CapLOC sued FMC and McCord in New York, CapLOC argues the Court should "decline the [Insurers'] invitation to elevate another case with separate parties above the parties and contract at issue in this one." Doc. 44, Pl.'s Reply, 5.

Insurers point to *Drennen* as "[t]he leading case in Texas regarding enforcement of choice of law provisions in contracts" and note how the court upheld the choice-of-law provision despite a lack of substantial relationship between the chosen state, the parties, and the transaction. Doc. 42, Defs.' Resp., 16. Insurers further note that "[o]ther jurisdictions also consistently uphold New York choice of law provisions" despite the lack of substantial relationship. *Id.* at 17. According to Insurers, "[t]his is particularly true in the context of international defendants." *Id.* at 17. As evidence of a reasonable basis for the parties' choice, the Insurers highlight (1) their reasons for selecting New York law; (2) CapLOC's agreements with FMC and McCord, which contain New York choice-of-law provisions; and (3) the Bond's subrogation provisions that required Insurers to prosecute claims in New York. *Id.* at 18–19.

In *Drennen*, the Supreme Court of Texas addressed "whether New York choice-of-law provisions in a Texas-based corporation's executive bonus-compensation incentive programs are enforceable." 452 S.W.3d at 321. A geologist for ExxonMobil received partial compensation under

- 10 -

an incentive program that awarded restricted stock. *Id.* at 322. The incentive program "include[d] choice-of-law provisions providing for application of New York law, although ExxonMobil is headquartered in Texas and incorporated in New Jersey." *Id.* After the geologist resigned, ExxonMobil cancelled his outstanding restricted shares under the incentive program. *Id.* at 322–23. The court considered that both Texas and New York had some relationship to the contract. *Id.* at 324. For Texas, "ExxonMobil [was] now headquartered in Texas, and [the geologist] worked in Houston when he executed both Incentive Program agreements." *Id.* For New York, "[the geologist] spent three years of his career working for ExxonMobil in its New York City office in the mid–1980s," "ExxonMobil's outside counsel is a New York law firm," and "the subject-matter of the transaction—XOM shares—are traded on the New York Stock Exchange and are valued based on the average of the high and low price of the shares as reported on the consolidated tape at the New York Stock Exchange in New York City." *Id.* Relying on the comments in the Restatement, the court found section 187(2)(a) "d[id] not preclude application of New York law" because "[e]ven when a relationship is not substantial, the parties may be held to the chosen state's law when they had a reasonable basis for their choice, such as choosing law they know well or that it is well developed." *Id.* at 325 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. f).

Insurers latch onto this final quote—regarding "well-developed" law—to argue that New York's status as an "international commercial center" makes the choice of law reasonable. Doc. 42, Defs.' Resp., 16–17. However, the *Drennen* court did not define the term quite so broadly in its analysis. *See* 452 S.W.3d at 325. The court first recited the three reasons given by the plaintiff for the choice of law:

> (1) [the plaintiff] provides incentive awards to large numbers of employees in many states and countries, many of whom move throughout their careers, so consistency

is required to administer the Incentive Programs; (2) New York has a well-developed and clearly defined body of law regarding employee stock and incentive programs; and (3) ExxonMobil's stock is listed on the New York Stock Exchange, and New York—as home of the Stock Exchange—has a well-developed and predictable body of law regarding a wide variety of financial transactions, securities, and securities-related transactions, making it a routine choice of law for parties to stock-related transactions and agreements.

*Id.* Taking these three reasons into consideration, the court concluded that "the Restatement d[id] not preclude application of New York law." *Id.*

Insurers try to follow the formula used by ExxonMobil in *Drennen* by similarly providing three reasons for their New York choice-of-law clause: (1) "[t]he Insurers are foreign companies that do business throughout the United States and have an incentive for uniformity in their contracts with U.S. insureds . . . ;" (2) "[t]he transaction was multi-state, with London based Insurers issuing a Policy to a North Carolina LLC with an office in Texas through a broker in Illinois;" and (3) "[t]he Insurers have a familiarity with New York law due to its status as a commercial center with a well-developed body of insurance law." Doc. 42, Defs.' Resp., 18. But unlike *Drennen*, none of these reasons connect the parties or the transaction to New York. *See Drennen*, 452 S.W.3d at 325. To overcome this, Insurers point to an out-of-circuit case that upheld a choice-of-law provision as reasonable when none of the parties or the transaction had a relationship to New York. *See* Doc. 42, Defs.' Resp., 17 (citing *Gen. Ret. Sys. of City of Detroit v. UBS, AG*, 799 F. Supp. 2d 749, 757 (E.D. Mich. 2011) (finding a reasonable basis "in cases of complex financial transactions for parties domiciled in different states to elect New York law to govern their disputes")). As no Texas court appears to have followed this path, the Court declines to do so as well.

The Court finds the other cases cited by the Insurers similarly unpersuasive. Insurers first cite to *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.* where the Second Circuit found a reasonable

- 12 -

basis for the choice of "New York's highly developed body of commercial law to govern the Agreement." 87 F.3d 604, 608 (2d Cir. 1996). However, in *Valley Juice* the defendant was also incorporated in New York, so at least one party had a relationship with New York. *Id.* In the present case, no party has a relationship with New York through the Policy. *See* Doc. 22-1, Ex. A. Therefore, the parties in *Valley Juice* had a more significant relationship and reasonable basis for the choice of New York law than the present parties.

The next case cited by the Insurers, *Cooper v. Certain Underwriters at Lloyd's, London*, is inapposite. In *Cooper*, the Ninth Circuit upheld the district court's enforcement of a New York choice-of-law provision based on the application of California's choice-of-law rules. 716 F. App'x 735, 736 (9th Cir. 2018). Importantly, "California choice of law considers an international defendant's geographic proximity to the chosen state." *Id.* Texas does not. *See Desantis*, 793 S.W.2d at 677–78 (adopting the Restatement for analyzing choice of law issues, which does not include geographic proximity as a factor). Thus, *Cooper* is inapplicable to the present case.

For the reasons stated above, none of the cases cited by the Insurers persuades the Court to find the parties or the transaction had a substantial relationship to New York. The Court therefore finds the parties lacked a reasonable basis for their choice because the parties "cannot require that their contract be governed by the law of a jurisdiction which has no relation whatever to them or their agreement." *Int'l Ints., L.P. v. Hardy*, 448 F.3d 303, 308 (5th Cir. 2006) (quoting *Desantis*, 793 S.W.2d at 677) (certifying to the Supreme Court of Texas the issue of whether the reasonable basis for the parties' choice is removed when the parties no longer have a relationship to the chosen state).

Finding a lack of reasonable basis for the parties' choice, the Court turns to whether a substantial relationship exists between the parties or transaction and the chosen state. Insurers assert

that the agreements between CapLOC and FMC establish a relationship with New York because those agreements contain New York choice-of-law clauses and CapLOC sued FMC in New York. Doc. 42, Defs.' Resp., 18–19. Neither party cites to, nor has the Court found, any case holding that a third-party agreement can establish a relationship between a non-party to the agreement or transaction and a state. More significantly, neither party maintains a headquarters, mailing address, nor conducted the transaction in or from New York. *See Cardoni*, 805 F.3d at 581 (finding "a reasonable basis for agreeing that Texas law would apply" when one party was "headquartered in the state"); *Le-Vel Brands, LLC, v. Bland*, 2019 WL 4753041, at *4 (N.D. Tex. Sept. 30, 2019) (finding "a reasonable basis for selecting Texas state law as the governing law given that Plaintiff is incorporated in Texas and has a Collin County, Texas mailing address"). Thus, the parties lacked a relationship, much less a substantial relationship, with New York. Because the parties lack a reasonable basis for their choice and a substantial relationship to New York, the Court holds the New York choice-of-law clause is unenforceable and Texas law governs the issues of this case.

## IV.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** CapLOC's Motion for Partial Summary Judgment. The Court finds Texas law applies to the notice and suit-limiting provisions. In accordance with the Scheduling Order (Doc. 31), the second round of summary judgment motions—and any other motions for summary judgment—are due no later than **July 1, 2022**.

SO ORDERED.

SIGNED: January 3, 2022.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE